**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

<u>**CIVIL MINUTES -- GENERAL**</u>

| | |
|---|---|
| Case No.    **CV 21-8553-JFW(ASx)** | Date:  December 27, 2021 |

Title:      Kimberly Snover, et al. -v- FCA US LLC, et al.

**PRESENT:**

            **HONORABLE JOHN F. WALTER, UNITED STATES DISTRICT JUDGE**

| | |
|---|---|
| **Shannon Reilly** | **None Present** |
| **Courtroom Deputy** | **Court Reporter** |

| | |
|---|---|
| **ATTORNEYS PRESENT FOR PLAINTIFFS:** | **ATTORNEYS PRESENT FOR DEFENDANTS:** |
| None | None |

**PROCEEDINGS (IN CHAMBERS):**    **ORDER DENYING  PLAINTIFFS' MOTION TO REMAND [filed 11/30/21; Docket No. 19]**

On November 30, 2021, Plaintiffs Kimberly Snover and Steven Snover (collectively, "Plaintiffs") filed a Motion to Remand ("Motion").  On December 13, 2021, Defendant FCA US LLC ("FCA") filed its Opposition.  On December 20, 2021, Plaintiff filed a Reply.  Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court finds that this matter is appropriate for decision without oral argument.  The hearing calendared for January 3, 2022 is hereby vacated and the matter taken off calendar. After considering the moving and opposing papers, and the arguments therein, the Court rules as follows:

**I.      Factual and Procedural Background**

On April 8, 2021, Plaintiffs filed a Complaint in Los Angeles Superior Court against FCA, alleging claims for violations of the Song-Beverly Warranty Act, or California's "lemon law," in connection with their purchase on March 28, 2020 of a new 2020 Jeep Cherokee, which was manufactured by FCA (the Subject Vehicle").[1]  Plaintiffs allege that the Subject Vehicle contained or developed various defects, including defects related to the electrical system, defects causing the spontaneous activation of the collision sensor and/or traction sensor, defects causing the Subject Vehicle to shift into neutral while driving, defects causing the forward collision braking setting to be turned off, and defects causing the failure of the power transfer unit ("PTU")

On October 28, 2021, Defendant filed a Notice of Removal, and removed this action to this

---

[1]  Plaintiff also alleged a claim for negligent repair against AutoNation Chrysler Dodge Jeep Ram ("AutoNation").  However, on September 30, 2021, Plaintiff dismissed AutoNation from this action.

Court on the basis of diversity jurisdiction, 28 U.S.C. § 1332(a).[2]

## II. Legal Standard

A motion to remand is the proper procedure for challenging removal. *See N. Cal. Dist. Council of Laborers v. Pittsburg-Des Moines Steel Co.*, 69 F.3d 1034, 1038 (9th Cir.1995). The removal statute is strictly construed, and any doubt about the right of removal is resolved in favor of remand. *See Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir.1992); *see also Prize Frize, Inc. v. Matrix, Inc.*, 167 F.3d 1261, 1265 (9th Cir.1999). Consequently, if a plaintiff challenges the defendant's removal of a case, the defendant bears the burden of establishing the propriety of the removal. *See Gaus*, 980 F.2d at 566; *see also Duncan v. Stuetzle*, 76 F.3d 1480, 1485 (9th Cir.1996) (citations and quotations omitted) ("Because of the Congressional purpose to restrict the jurisdiction of the federal courts on removal, the statute is strictly construed, and federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance.").

## III. Discussion

In their Motion, Plaintiffs argue that FCA has failed to establish that diversity jurisdiction pursuant to 28 U.S.C. § 1332(a) exists because FCA has failed to demonstrate that the amount in controversy exceeds $75,000. In its Opposition, FCA argues that it is apparent from the face of Plaintiffs' Complaint that the amount in controversy exceeds $75,000.

### A. Legal Standard for Calculating the Amount in Controversy

Diversity jurisdiction founded under 28 U.S.C. § 1332(a) requires that: (1) all plaintiffs be of different citizenship than all defendants; and (2) the amount in controversy exceed $75,000. *See* 28 U.S.C. § 1332(a). In determining the amount in controversy, courts first look to the allegations in the complaint. *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015). However, "where it is unclear or ambiguous from the face of a state-court complaint whether the requisite amount in controversy is pled," courts apply a preponderance of the evidence standard, which requires the defendant to provide evidence showing that it is more likely than not that the $75,000.00 amount in controversy is met. *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 699 (9th Cir. 2007) (*citing Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996)). In considering whether the removing defendant has satisfied its burden, the court "may consider facts in the removal petition" and "summary-judgment-type evidence relevant to the amount in controversy at the time of removal." *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997) (*quoting Allen v. R & H Oil & Gas. Co.*, 63 F.3d 1326, 1335–36 (5th Cir. 1995)).

"[T]he Court can include the Song-Beverly Act's civil penalty damages in the amount in controversy calculation." *Mullin v. FCA US, LLC,* 2020 WL 2509081, at *4 (C.D. Cal. May 14, 2020); *see also Brady v. Mercedes-Benz USA, Inc.*, 243 F. Supp. 2d 1004, 1009 (N.D. Cal. 2002) (*citing Davenport v. Mutual Ben. Health & Acc. Ass'n*, 325 F.2d 785, 787 (9th Cir. 1963)). In

---

[2] Although FCA's Notice of Removal mistakenly cites to 28 U.S.C. § 1331, diversity jurisdiction pursuant to 28 U.S.C. § 1332(a) is the only basis for removal alleged in the Notice of Removal.

addition, "a court must include future attorneys' fees recoverable by statute or contract when assessing whether the amount-in-controversy requirement is met." *Fritsch v. Swift Transp. Co. of Ariz., LLC*, 899 F.3d 785, 794 (9th Cir. 2018).  However, a removing defendant must "prove that the amount in controversy (including attorneys' fees) exceeds the jurisdictional threshold by a preponderance of the evidence," and "make this showing with summary-judgment-type evidence." *Id*. at 795.  In addition, "[a] district court may reject the defendant's attempts to include future attorneys' fees in the amount in controversy if the defendant fails to satisfy this burden of proof."  *Id.* "[D]istrict courts may . . . rely on their own knowledge of customary rates and their experience concerning reasonable and proper fees."  *Id.* (internal quotation marks omitted).

### B. Defendant Has Demonstrated that the Amount in Controversy Exceeds $75,000

In the Complaint, Plaintiffs seek actual damages, a civil penalty, punitive damages, and attorneys' fees.  Plaintiffs also allege that they "suffered damages in a sum to be proven at trial in an amount that is not less than $25,001.00."  Complaint, ¶ 12.  The Complaint does not contain any other allegations regarding the amount of Plaintiffs' damages.

Under the Song-Beverly Warranty Act, actual damages are the "amount equal to the actual price paid or payable by the buyer," less the reduction in value "directly attributable to use by the buyer."  Cal. Civ. Code § 1793.2(d)(2)(B)–(C).  The reduction is based on the number of miles the buyer has driven the vehicle prior to the first attempted repair, or the "use offset."  *Id*.  Courts calculate the use offset by multiplying the price paid for the vehicle "by a fraction having [as] its denominator 120,000 and having as its numerator the number of miles traveled by the new motor vehicle prior to the time the buyer delivered the vehicle for correction of the problem."  *Mullin*, 2020 WL 2509081, at *3 (internal citations omitted).

In this case, FCA has provided undisputed evidence that Plaintiffs purchased the Subject Vehicle for $41,108.[3]  Declaration of Matthew M. Proudfoot ("Proudfoot Decl.") (Docket No. 21-1), Exh. 5 (Retail Installment Sales Contract).  According to the Retail Installment Sales Contract, when Plaintiff purchased the Subject Vehicle, it had an odometer reading of 19 miles.  *Id.*  In addition, at the time of the first attempted repair, Plaintiff's repair orders demonstrate that the Subject Vehicle had an odometer reading of 24,970 miles.  *Id.*, at Exh. 4 (repair orders for the Subject Vehicle).  As a result, the use offset for the Subject Vehicle would be $8,547.38 (($41,108 purchase price x (24,970 miles at the time of first repair - 19 miles at time of purchase)) ÷ 120,000). Therefore, taking into account the use offset, Plaintiffs would be entitled to actual damages of $32,560.62 ($41,108 purchase price - $8,547.38 use offset).

With respect to a civil penalty, if a court determines that a defendant's failure to comply with the terms of the Song-Beverly Warranty Act is willful, a plaintiff is entitled to recover a civil penalty of up to twice the amount of the actual damages.  Cal. Civ. Code § 1794(c).  Thus, Plaintiff would be entitled to a civil penalty of $65,121.24 ($32,560.62 actual damages x 2).  As a result, the amount in controversy in this action would be $97,681.86 ($32,560.62 actual damages + $65,121.24 in civil penalties) before the Court even considers Plaintiff's potential punitive damages

---

[3] $41,108 represents the cash price of the Subject Vehicle paid by Plaintiffs.  The total sales price for the Subject Vehicle, including sales tax, finance charges, and other fees, was $50,500.68.

or attorneys' fees, which would only increase the amount in controversy.  *See, e.g., Pristave v. Ford Motor Company,* 2020 WL 4883878 (C.D. Cal. Aug. 20, 2020).

Accordingly, the Court concludes that FCA has met its burden of demonstrating that the amount in controversy exceeds $75,000.

**IV.    Conclusion**

For all the foregoing reasons, Plaintiffs' Motion is **DENIED**.

IT IS SO ORDERED.